# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 15, 2008

## STATE OF TENNESSEE v. JASON L. HOBACK

**Direct Appeal from the Circuit Court for Franklin County**
**No. 17385     Thomas W. Graham, Judge**

---

**No. M2008-00581-CCA-R3-CD - Filed December 16, 2008**

---

The defendant, Jason L. Hoback, was convicted in the Franklin County Circuit Court of driving on a revoked license, third offense, a Class A misdemeanor, and a violation of the seatbelt law, a Class C misdemeanor. He was subsequently sentenced to eleven months and twenty-nine days, with five months to be served in the county jail, for the driving on a revoked license conviction and was fined for the seatbelt violation. On appeal, the defendant raises the single issue of sufficiency of the evidence. Following review, the judgments of conviction are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Philip A. Condra, District Public Defender, and Robert G. Morgan, Assistant Public Defender, for the appellant, Jason L. Hoback.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; James Michael Taylor, District Attorney General; and William Copeland and Steven M. Blount, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

Shortly after 1:00 p.m., Officer Stacy Shrum of the Winchester Police Department was traveling south on Cowan Highway when he observed that the driver of a Jeep Cherokee, traveling northbound, was not wearing a seat belt. At the time the two vehicles passed, only a turn lane separated them, as both vehicles were operating in the left lane of their respective traffic flows. He observed the driver and at least one male passenger inside the vehicle. Officer Shrum turned his vehicle around in order to initiate a traffic stop of the Jeep. He acknowledged that the vehicle was out of his sight for the short amount of time that it took for him to turn his patrol car around.

However, after Officer Shrum turned his vehicle around and entered the northbound flow of traffic, the defendant "was already headed back his way before he turned in the Dollar General." Officer Shrum did not activate his blue lights prior to entering the parking lot, and he did not observe anyone inside the Jeep switch seats as he traveled behind.

When Officer Shrum pulled into the parking lot, he approached the Jeep and found the defendant in the driver's seat. The defendant was not wearing a seatbelt. When Officer Shrum asked for the defendant's driver's license, the defendant informed him that his license had been revoked. Officer Shrum subsequently contacted dispatch and confirmed that the defendant's license was, in fact, revoked. The defendant was then placed under arrest.

The defendant was subsequently indicted by a Franklin County grand jury for driving on a revoked license; driving on a revoked license, fourth offense; and violation of the seatbelt law. At a subsequent jury trial, the State presented only the testimony of Officer Shrum and introduced a Certificate of Status of Operator's License, which indicated that the defendant's license was revoked on the date he was arrested.

At trial, the defendant testified on his own behalf and contradicted the testimony of Officer Shrum on numerous points. Specifically, the defendant denied that he was driving the vehicle. According to the defendant, he and two friends, whose licenses were also revoked, were car pooling to work. The defendant did acknowledge that he was the owner of the Jeep, but he asserted that a passenger, Ricky Steele, had been driving. The defendant stated that the group had stopped at Dollar General after work, and he indicated that the three passengers in the Jeep were all outside prior to Officer Shrum's arrival on the scene.

After hearing the evidence presented, the jury returned verdicts of guilty with regard to driving on a revoked license and violation of the seatbelt law. At a separate bifurcated proceeding, the trial court found the defendant guilty of driving on a revoked license, third offense, after the State conceded that one of the defendant's prior convictions for driving on a revoked license was older than ten years. At a later sentencing hearing, the court sentenced the defendant to a term of eleven months and twenty-nine days and ordered that five months of the sentence be served in the county jail. The court imposed a fine for the seatbelt violation. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant raises the single issue of sufficiency of the evidence. Specifically, he asserts that the evidence is insufficient because "the State's witness was unable to positively identify the Defendant as the driver of the vehicle until he approached it after it had stopped in a parking lot." In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.

Ct. 2781 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan* , 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted). Tennessee Code Annotated section 55-50-504 (2006) provides that a person is guilty of driving on a revoked license when he or she "drives a motor vehicle . . . at a time when the person's privilege to do so is cancelled, suspended, or revoked[.]" Our seatbelt law states that "[n]o person shall operate a passenger motor vehicle on any highway . . . in this state unless such person [is] restrained by a safety belt at all times the vehicle is in forward motion." T.C.A. § 55-9-603(a)(1) (2006).

As noted, the defendant contends that the officer failed to identify him prior to the stop, thus, making the evidence insufficient. The following is taken from the defendant's brief:

> Both statutes require the vehicle to be in motion or operation before the operator can be held criminally liable. A law enforcement officer who observes a driver not wearing a seat belt may legally detain that driver for the suspected offense. *State v. Beffrey*, 2006 Tenn. Crim. App. LEXIS 892 (Tenn. Crim. App. Nov. 16, 2006). . . . However, the reasonable suspicion standard necessary for an officer to make a constitutionally valid stop falls below the reasonable doubt needed for a guilty verdict. *State v. Degrafenreid*, 2003 Tenn. Crim. App. LEXIS 369 (Tenn. Crim. App. Apr. 23, 2003). . . .

From this assertion, we glean that the defendant is arguing that although Officer Strum had reasonable suspicion to stop the car based on seeing the driver without a seat belt, this is not proof beyond a reasonable doubt because the officer was unable to positively identify the defendant as the driver until after the vehicle was stopped. He states that the officer "did not specifically identify the Defendant as being in the driver's seat until approaching it in the parking lot." The defendant is apparently asserting that an officer is required to know the identity of the driver of a vehicle prior to it being stopped. This is a practical impossibility. Our traffic statutes are written in such a way to allow an officer to effect a traffic stop upon reasonable grounds to believe that the driver of the vehicle, whomever that person may be, has committed a traffic violation. Thus, we find no merit to the defendant's argument.

After review, we conclude that evidence, viewed in the light most favorable to the State, is more than sufficient to support the defendant's two convictions. While there were material conflicts in the testimony given by Officer Shrum and the defendant as to the sequence of events and the placement of the defendant when Strum approached, all of the testimony was heard by the jury. Our review of the evidence is not equivalent to that of the jury's, as all questions involving the credibility of witnesses, the weight and value given to be given to the evidence, and all factual issues are resolved by the trier of fact, not this court. *See Pappas*, 754 S.W.2d at 623. The jury viewed the witnesses in this case, heard their testimony, and observed their demeanor on the stand. It was the jury's prerogative to weigh the credibility of the witnesses and to resolve any conflicts in their testimony. This court will not reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d at 835.

Officer Strum testified that he passed the defendant's Jeep on the highway and observed that the driver was not wearing a seatbelt. Officer Strum then turned his patrol car around to initiate a traffic stop and, according to his testimony, the vehicle was still moving on the highway when the officer pulled back into the flow of traffic. He observed the vehicle pull into the parking lot of Dollar General and specifically stated that he did not see any indication that persons in the vehicle had switched places. After the vehicle stopped in the parking lot, Officer Strum approached the vehicle and found the defendant seated in the driver's seat, not wearing a seat belt. This testimony more than supports the inference that the defendant was the driver of the vehicle. Moreover, the State introduced evidence, and the defendant admitted, that his driver's license was revoked on the day he was arrested. Thus, we conclude that the evidence presented supports the verdicts as rendered.

**CONCLUSION**

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-4-